IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No. 1:18-CR-73-CMH |
| ) | |
| ZAKARIA TAOUFIK, ) | |
| ) | |
| Defendant. ) | |

**POSITION OF THE UNITED STATES ON SENTENCING**

This case comes before the Court for re-sentencing following remand from the Fourth Circuit, which struck down a four-level Guidelines enhancement for assault with a dangerous weapon. However, the Court's previous sentence of 60 months' incarceration is still well below the new Guidelines range, and was more than justified by the other sentencing factors in 18 U.S.C. § 3553. The Government therefore respectfully requests that the Court re-sentence the Defendant to 60 months' imprisonment.

**I.      FACTUAL BACKGROUND**

The Defendant, Zakaria Taoufik, is a citizen of Morocco. The Defendant entered the United States in 1999 as a lawful permanent resident pursuant to receiving a slot in the Diversity Visa Lottery. In 2010, a U.S. immigration judge issued a valid order of removal against the Defendant based on a number of criminal offenses.

In January 2018, the Defendant staged a violent outburst on a passenger flight at Dulles International Airport as Immigration and Customs Enforcement ("ICE") officers attempted to execute his lawful removal to Morocco. The Defendant's conduct was premeditated; before boarding, he announced to the captain of the aircraft that he intended to sabotage his removal by

1

fighting hard and making the flight uncomfortable for everybody. Once on board, the Defendant immediately proceeded to carry out this threat. He screamed threats and obscenities. He repeatedly slammed his head into the on-board entertainment screen in front of him until it shattered. He assaulted the officers accompanying him on the flight, attempting to head-butt and bite them. Worst of all, the Defendant spat deliberately into the face of Officer Jeremy Thompson, hitting him in the eye, and also hitting another officer in the eye. The Defendant and all of the officers knew that the Defendant carried—in his own words—a "communicable, life-threatening disease." As a result of the Defendant's highly disruptive conduct, the captain ordered the Defendant off the plane.

This was the second removal attempt that the Defendant had managed to foil. ICE had attempted to remove the Defendant to Morocco from Atlanta, Georgia, in October 2017. When the Defendant thwarted this first removal attempt through threats of disruptive behavior, ICE made this second attempt through Dulles International Airport.

## II. PROCEDURAL HISTORY

On January 30, 2018, a complaint and arrest warrant were issued against the Defendant in connection with his assault on the ICE officers at Dulles. The Defendant was indicted on February 7, 2018, on one count of failure to depart, in violation of 8 U.S.C. § 1253(a)(1)(C), and one count of assaulting a federal officer, in violation of 18 U.S.C. § 111(a). Docket No. 6. A jury trial was scheduled for May 30, 2018.

On May 30, 2018, after the venire was seated in the courtroom, the Defendant made a request to address the Court. A lengthy bench conference ensued, after which the Court decided to have the Defendant evaluated for competency to stand trial. A report finding the Defendant

competent to stand trial was received without any objections on September 28, 2018, and a new trial date was set for November 7, 2018.

The trial commenced as scheduled on November 7, 2018. The jury returned a verdict of guilty on both counts that same day. Sentencing was set for January 25, 2019.

At sentencing, the Defendant contested a 6-level enhancement for law enforcement victims pursuant to U.S.S.G. § 3A1.1(c)(1), and a 4-level enhancement for use of a dangerous weapon during an assault pursuant to § 2A2.2(b)(2)(B). The Court applied both enhancements, and calculated the resulting Guidelines range to be 120–150 months. However, because of a statutory cap on Count Two, the Guidelines range ultimately became 96 months.

The Defendant appealed, arguing that the district court erred in excluding evidence regarding his mental health, and in imposing the 4-level sentencing enhancement for use of a dangerous weapon. The Fourth Circuit determined that the Court properly excluded evidence of the Defendant's mental health because it was proffered for an impermissible purpose, namely, to excuse his conduct. Docket No. 116. As for the sentencing enhancement, the Fourth Circuit concluded that the record was insufficient to support the imposition of the enhancement, and remanded for re-sentencing. *Id.*

### III.   GUIDELINES CALCULATION

The Fourth Circuit's unpublished opinion concluded that the record lacked any factual basis to support the application of the dangerous weapon enhancement pursuant to U.S.S.G. §2A2.2(b)(2)(B), because there was insufficient "evidence that he inflicted serious bodily injury on the officers with his teeth and head." Docket No. 116 at 12. However, an "assault" need not include physical contact; therefore, the fact that the Defendant's assault "did not result in any physical contact" with the officers should not have been dispositive. *Id.* at 11.

3

Nevertheless, given that this Court's previous sentence of 60 months is more than justified by the other sentencing factors under 18 U.S.C. § 3553, the Government elects not to re-litigate the dangerous weapon enhancement.

The Guidelines calculations on remand are therefore as follows:

| Count One<br>8 U.S.C. § 1253(a)(1)(c) | Offense Level |
|---|---|
| Base Offense Level<br>USSG § 2L1.2(a) | 8 |
| Removal-Order Enhancement<br>USSG § 2L1.2(b)(2)(C) | 6 |
| **TOTAL** | **14** |

| Count Two<br>18 U.S.C. § 111(a) | Offense Level |
|---|---|
| Base Offense Level<br>USSG § 2A2.2(a) | 14 |
| Bodily Injury Enhancement<br>USSG § 2A2.2(B)(3)(A) | 3 |
| Victim-Related Adjustment<br>USSG § 3A1.2(c)(1) | 6 |
| **TOTAL** | **23** |

Counts One and Two group together pursuant to § 3D1.2, and the higher of the two adjusted offense levels applies pursuant to § 3D1.3(a). Based on Count Two's offense level of 23 and the Defendant's criminal history Category V, the Guidelines Range is 84–105 months' incarceration. However, there is an eight-year statutory maximum for Count Two. Accordingly, the Defendant's Guidelines range is 84–96 months. *See* U.S.S.G. § 5G1.1(c)(1).

IV.     **OTHER SENTENCING FACTORS**

In addition to considering the properly calculated Guidelines range, the Court must also consider the other sentencing factors set forth in 18 U.S.C. § 3553(a). *See, e.g., United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). In the Government's view, the most pertinent of

those factors here are the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1); the history and characteristics of the Defendant, *id.*; and the need for general and specific deterrence, *id.* § 3553(a)(2)(B) & (C). These factors are more than sufficient to justify re-imposing a sentence of 60 months' incarceration in this case.

### A. The Nature and Circumstances of the Offense

The Defendant's conduct was premeditated, and part of a pattern of behavior that began with his successful obstruction of removal in Atlanta. He posed a threat to everyone on board a commercial airplane, an environment is which safety concerns are paramount. He used all means available to him to attack, including spitting and attempted biting.

The officers knew that the Defendant had a life-threatening, communicable disease. Two of them were directly exposed to this disease and subjected to months of medical monitoring and great anxiety as a result of the Defendant's attack. In his letter to the Court, Officer Thompson writes of how "degraded and humiliated" he felt by the Defendant's spitting into his eye, and how he experienced a kind of fear he had never previously felt because of the effect this assault could potentially have on his wife and six children. The Defendant's crime injured Officer Thompson's entire family in a life-changing way, emotionally and psychologically.

### B. The Personal History and Characteristics of the Defendant

From the beginning of this case all the way through his first sentencing, the Defendant has continued to lie about what he did. He first suggested to the Court that he may have had a seizure and accidentally assaulted the officers, then later claimed that his violent actions were somehow involuntary reactions caused by post-traumatic stress disorder. He told the Court at sentencing that he "was not at any time fighting or resisting [his] deportation," and blamed Officer Thompson, the officer whose eye he spat on, for the pilot's order to deplane. Tr. at 8, 10.

Until he is able to admit and accept responsibility for his own wrongdoing, the Defendant will not be capable of change. He cannot complain that he has not had any opportunities in life. In 1999, he literally won a golden ticket—a spot in the United States' Diversity Visa Lottery program—and immigrated to this country as a permanent legal resident. PSR ¶ 63. Almost immediately, he began squandering the opportunities this golden ticket afforded him. He racked up multiple convictions for fraud or theft-related crimes, one conviction for assault with a deadly weapon in which he assaulted the victim with a switchblade knife with the intent to kill and inflict serious injury, and convictions for common law robbery, breaking and entering, and larceny after breaking and entering, in which he pulled a knife on a victim and took his car, money, and belongings. *Id.* ¶¶ 45–51.

### C. The Need for General and Specific Deterrence

This case presents the type of crime that requires a significant sentence in order to send a strong message of deterrence. Deportees must be warned that an assault on the accompanying ICE officers does <u>not</u> provide an extrajudicial, final option to prevent their removals, and that it will only result in serious punishment before they are removed.

This Defendant needs to be specifically deterred from engaging in a third attempt to block his deportation, which ICE will presumably attempt to execute following the completion of his sentence. The Defendant has exhibited a very specific *modus operandi*—engaging in disruptive outbursts—which has thus far successfully postponed two removals as well as a federal criminal trial. A significant sentence is necessary to deter him from making another attempt to thwart his removal through physical violence.

V. **CONCLUSION**

For the foregoing reasons, the Court's previous sentence of 60 months' incarceration was necessary in order to satisfy the sentencing purposes set forth in 18 U.S.C. § 3553. The United States therefore respectfully requests that the Court re-sentence the Defendant to 60 months' incarceration, with credit for time served.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: /s/ Grace L. Hill
Grace L. Hill
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
grace.hill@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2020, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic copy to counsel of record.

By:   /s                            
       Grace L. Hill
       Counsel for the United States